# Wytheville.

## WOODRUM v. GROSS.

### June 22nd, 1893.

SALE—*Breach—Verdict—Evidence—Case at bar.*—Defendant agreed to pay plaintiff $200 if he procured Spanish cigarette paper put up in reels suitable for use in defendant's machine and to buy 1,000 reels from plaintiff. He procured a sample reel of the paper, which defendant approved and ordered 500 reels like it. These plaintiff procured. Defendant refused to take them, claiming they were not like the sample. After some delay he paid the $200. At trial of action for price of the 500 reels an expert testified that these reels were exactly like the sample. Verdict was for plaintiff.

HELD:

The verdict could not be disturbed.

Error to judgment of hustings court of Roanoke City, rendered at September term, 1891, in an action of *assumpsit*, wherein Eugene Gross was plaintiff and R. H. Woodrum was defendant. Opinion states the case.

*Penn & Cocke*, for plaintiff in error.

*Smith & King*, for defendant in error.

LACY, J., delivered the opinion of the court.

This case is briefly as follows: R. H. Woodrum, the president of the International Cigarette Machine Company, which company used in its business a machine for the manufacture of

cigarettes, called the Luddington machine, and being engaged in the enterprise of introducing the company's cigarettes into Mexico and Cuba, he desired to procure Spanish cigarette paper, suitable for making cigarettes, and making them in the Luddington machine, and finding it a difficult task to get cigarette paper of Spanish make put up in reels so as to be used on the said machine, the Spanish paper being generally cut into sheets, suitable for doing the work of cigarette making by hand. He procured the services of the defendant in error, Eugene Gross, to find and procure this paper for him, and agreed to pay him $200 for doing so, and to order from him one thousand reels of this paper if suitable for his purposes.

Paper was procured by the said defendant in error, and the $200 paid, and five hundred reels of the paper ordered by the plaintiff in error, and procured by the said Gross. But after receiving one reel of this paper upon the payment of the $200, neglected and finally refused to receive and pay for it, and thereupon the defendant in error instituted his suit in trespass on the case, in *assumpsit*, against the plaintiff in error. At the trial the defendant demurred to the declaration of the plaintiff, and to each count thereof, which demurrer the court overruled, and the case being tried by a jury, there was a verdict for the plaintiff, and his damages assessed at $770 35.

Whereupon the defendant moved the court to set aside the said verdict and grant to him a new trial, but the court overruled the motion to set aside the verdict, and rendered judgment in accordance therewith. Whereupon the plaintiff in error applied for and obtained a writ of error to this court.

The first assignment of error here is the action of the court in overruling his demurrer to the declaration of the plaintiff, upon the ground that the declaration did not set forth the performance of the conditions on his part set forth in the contract.

The declaration sets forth the cause of action distinctly, and sets forth the performance on the part of the plaintiff his

agreement and the refusal of the defendant to receive and pay for the same, and there is no defect in said declaration nor in any count thereof, and there was no error in the action of the court in overruling the same.

The next assignment of error is the action of the court in overruling the motion of the defendant to set aside the verdict and grant to the defendant a new trial. Upon the consideration of this motion we will observe that the evidence of the plaintiff must be considered by this court upon the principles of a demurrer to the evidence, which are well understood by the profession. *Jones* v. *Rixey*, 79 Va., 657; *Moore* v. R. & D. R. R., 78 Va. Rep.

The plaintiff testified as follows:

In April, 1890, I went to the place in Baltimore, where Mr. R. H. Woodrum was exhibiting his cigarette machine, and carried with me a small reel of Spanish cigarette paper, about one-third as large as the reel here exhibited, which I had obtained from Valencia, Spain. Mr. James Clark, president of a bank in Lynchburg, had informed me that Mr. R. H. Woodrum had offered a large reward for this kind of paper put up in reels. Spanish paper itself is very common, but the difficulty was to get it put up in reels, as it is always put up in sheets, and is used by hand in making cigarettes. After corresponding with a dozen or more factories, I finally found one in Valencia, Spain, that could put the paper up in reels. As soon as Mr. R. H. Woodrum saw the small reel exhibited, April, 1890, he asked me where I had gotten it from. I declined to tell him. He said, "That's the very paper we want, and have been trying to find," and if he could get it put up in reels, so as it could be used on the Luddington cigarette machine for his trade in Mexico and Cuba, he would pay him a good price for it. When I refused to give him the name of the manufacturer, we entered into the contract here exhibited.

[Contract.]

BALTIMORE, APRIL 3, 1890.

This agreement, made and entered into this 3d day of April, 1890, between Eugene Gross, of Baltimore, and R. H. Woodrum, of Roanoke, Va., witnesseth, that the said Eugene Gross has agreed as follows with the said Woodrum:

First. That he will undertake to get for the said Woodrum a reel of Spanish paper, such as the Spanish will accept in Mexico and Cuba, said reel to be put up as described—$1\frac{3}{4}$ inches wide, and cut sample and on a wheel or bound suitable for the Luddington machine.

Second. That when the paper is gotten to the satisfaction of the factories in Mexico, the said Woodrum will pay the said Gross two hundred dollars.

Third. The said Gross binds himself to get the exclusive agency from the factory who make said paper, and not to sell any paper of this kind to anyone else, only on the order of the said Woodrum.

Fourth. The said Woodrum binds himself to give the said Gross an order for (1,000) one thousand reels as soon as it is demonstrated that it is the kind of paper wanted in Mexico.

Fifth. The said Gross to furnish the said Woodrum with a sample reel as soon as possible to forward to Mexico.

Witness the following signatures and seals this 3d day of April, 1890:

R. H. WOODRUM.
EUGENE GROSS.

I then pulled off a few yards of the reel and gave the rest to Mr. R. H. Woodrum. On June the 6th, 1890, Mr. Woodrum again came to my office in Baltimore, and gave me an order for five hundred reels in the following words:

BALTIMORE, JUNE 6, 1890.
Mr. Eugene Gross:

Order for me five hundred reels of Spanish paper—$1\frac{1}{4}$, $1\frac{1}{8}$,

1⅜— and will pay for same upon delivery if said paper is exactly like the sample you gave me of Spanish paper. Must see the paper before paying for it.

R. H. WOODRUM,
President International Cigarette Machine.

After which I at once ordered the paper from the factory, Valencia, Spain, from which I had gotten the original small sample reel. The paper cost me $1 85 per reel, including duty. There was no agreement as to the price, but I expected to charge $2 50 per reel and allow him 5 per cent discount for cash. The paper arrived after some delay, and on July 29, 1890, I delivered to Mr. J. W. Coon, agent for Mr. Woodrum, a sample reel of the paper, and Mr. Coon gave me the following receipt:

BALTIMORE, JULY 29, 1890.

Received from Mr. Eugene Gross a reel of Spanish paper, for which I am to pay him the sum of $200 in ten days if the paper prove to be same as sample given to him or Mr. Woodrum.

J. W. COON,
Secretary and Treasurer.

I notified Mr. Woodrum that the five hundred reels of paper were ready for him whenever he should come and pay for them. I have never seen Mr. Woodrum from that time until to-day. He never come to get the paper. It is in my store in Baltimore now, useless to me. Mr. Woodrum can get it whenever he pays for it. I cannot sell it to any one for anything. Mr. J. W. Coon on September 4, 1890, sent me a check for $200 in payment of reward for sample reel. This is all that has been paid me.

Witness here read in evidence nine letters written him by Mr. Woodrum and Mr. Coon.

ROANOKE, VA., U. S. A., JULY 22, 1890.

Eugene Gross, Esq.:

Dear Sir,—Some three or four weeks ago I was up to see you about the paper, at which time you said you thought possibly some paper was on the way. I afterwards got Mr. Coon, president of the Commercial National Bank, to go up to see you and guarantee any bill you might order for me. He told me he saw you and afterwards wrote you guaranteeing bill in all its particulars. Now I have not heard a word from you yet. Please write to me and tell me what the status of the paper question is, as I want to know. If I cannot hear something from you very soon I will have to go to Spain or Paris and see if I can get it myself. And, of course, then our contract will be at an end; and mind what I tell you, if you get the paper for any one else, I expect to hold you to your contract written to me in Baltimore. I have done everything in my power, have given you guarantee, and every bank in Baltimore could tell you by making inquiry from my bank that my contract is good.

Now, if you succeed in getting this paper for any one else and not for me, I shall sue you on contract as soon as it is done. I do not make this as a threat, but to assure you that I intend to insist on my rights under that contract. I have been relying and waiting on you to get that paper, expecting to pay you $200 for the first reel of real Spanish paper and order all the rest of my paper through you. Now if you cannot get the paper please say so, and not keep me waiting.

Let me hear from you on receipt of this, and oblige,

Yours respectfully,

R. H. WOODRUM.

ROANOKE, VA., U. S. A., JULY 24, 1890.

Eugene Gross, Esq.:

Dear Sir,—Yours of July 23d to hand. I am glad to know you have succeeded in getting papers. I will be in Baltimore

in a day or two and look at the paper, and if it is what we want, will pay you the $200 at once.

Very respectfully,

R. H. WOODRUM.

ROANOKE, VA., U. S. A., AUGUST 15, 1890.

Eugene Gross:

Dear Sir,—Yours of August 12th to Mr. J. W. Coon, president Commercial National Bank, has been handed to me for reply. It seems like you are determined to have your money for the reel of paper before we have had a chance to ascertain whether it is the kind wanted in Mexico. Now, Mr. Gross, we are business people, and do not intend nor propose to pay for a pig in a bag. You enclosed to Mr. Coon a copy of his receipt in which he agrees to pay you $200 in ten days if the paper proves to be the same as the sample you gave me. Now the paper has not proven to be like the sample you gave me, and as a matter of fact, I frankly say I do not think it is the thing. If you will compare the two papers you will see the difference yourself. At the same time we have sent to Mexico to see if they will adopt it: if they will adopt it, it does not make any difference to me whether it is the same or not. Mr. Cox, of Richmond, Va., who has been in Mexico, says it is not the proper paper. It is improperly cut at any rate, even if it is the same quality.

But, laying all misunderstandings aside, Mr. Coon has not signed any paper to pay you $200 unless that paper proves to be the paper we want. That you will admit, and we are not going to take it unless it is the right kind of paper, and if the right kind of paper we expect to take it and pay you for it, and order all our paper through you. Now I ought to hear from Mexico by the 20th of this month, and hope to do so, and as soon as they decide down there that that is the paper they want you shall have your $200.

Respectfully,

R. H. WOODRUM.

ROANOKE, VA., U. S. A., AUGUST 18, 1890.

Eugene Gross:

Dear Sir,—Your letter of the 16th instant, directed to Mr. Coon, was handed to me for reply. In answer I will state it does seem to me like you are in a terrible hurry for the $200. Your $200 is unquestionably safe if the paper is what you claim it to be, and certainly your lawyer will not advise you to draw suit until you have given us reasonable time to decide with reference to the paper. If you require us to decide immediately, I shall decide it is not the paper. If you will give us proper time to decide, it may turn out all right and to your advantage, but if you demand a decision at once, I will express the paper to you and decide of my own judgment it is not the article wanted. I have sent the paper to Mexico to a party for his opinion. If it suits him, it will suit us. My opinion is your paper is not like the reel sent us. Mr. Cox's opinion, of Richmond, who spent eighteen months in Mexico, is that it is not the paper. At the same time, I am trying to get the Mexican people to adopt it, which will answer the same purpose, and that is all we want. If you decide to sue us at once, take the letter Mr. Coon sent you, and the paper, and carry them to your lawyer, and if he is a sensible man, he will advise you to give us time. We do not propose to pay for it unless it is what we want, and your being in such a hurry to get your $200 seems like you have your doubts yourself. You know Mr. Coon is good for anything he says, if you don't know me, and if we find out this is the paper needed, you shall have your $200.

Yours truly,

R. H. WOODRUM.

M.

ROANOKE, VA., U. S. A., DECEMBER 1, 1890.

Mr. Eugene Gross:

Dear Sir,—Yours of the 28th ulto. to hand. Allow me to state that I regard your letter as a dirty, impertinent piece of

paper, and I will say to you that you will not be able to beat our company out of any more money at present.

We paid the $200 to you, not because we were satisfied you had the paper we desired, but because you had been to some trouble and were making such a fuss about it. The paper that you have gotten is not the paper they use in Mexico, nor is it the paper I ordered. If you will read my order you will see that I stated that I would take the paper and pay for it, provided it was the paper we wanted. Now if the paper you ordered is not like the sample you sent, we do not want it. So you can make your calculations to go to court, for we will never pay you one cent outside of court. If you had been a gentlemen, and possessed any business capacity, you would have given me the address of the paper people for the two hundred dollars instead of acting as you did.

Very respectfully,

R. H. WOODRUM.

ROANOKE, VA., July 4, 1890.

Eugene Gross, Esq.:

Dear Sir,—Referring to our conversation of a day or two ago about the Spanish paper that you are getting for Mr. R. H. Woodrum, president of the International Cigarette Machine Company, allow me to say this, that whenever you get the paper and deliver it to Mr. Woodrum, and it is the kind of paper he desires, I bind myself to be responsible and guarantee the payment for the paper you furnish him, together with the $200 reward that he was to give you for getting the paper. Whenever you get the paper notify Mr. Woodrum, of this city, and he will come on and examine it, and if it is accepted by him I will pay his draft on me for the amount due you.

Very respectfully,

J. W. COON,
President Commercial National Bank.

ROANOKE, VA., AUGUST 7, 1890.

Mr. E. Gross:

Dear Sir,—On my return home I gave the reel of paper to Mr. Woodrum, and he thinks it will be what they want. He has sent a piece to Mexico, and as soon as he hears from it will send you my check for $200, or return the paper. They have not heard as yet; have not had time.

Truly yours,

J. W. COON.


ROANOKE, VA., SEPTEMBER 4, 1890.

Eugene Gross, Esq.:

Dear Sir,—I have been instructed to pay you $200. As I always told you, your money would come. The parties here was tied up by not hearing from the paper sent to Mexico. Mr. Woodrum will call and get the other and see you. You will always get what I promise you.

Thanking you for patience,

Yours truly,

J. W. COON.


ROANOKE, VA., NOVEMBER 24, 1890.

Mr. Eugene Gross:

Dear Sir,—The agreement made with you was if you could get the kind of paper they wanted they would take it. Mr. Woodrum says to me to-day that the paper reported on from Mexico is not what they want, and they cannot use it. You can dispose of it as best you can.

Truly yours,

J. W. COON.


Witness exhibited to the jury a piece of the sample reel given to Mr. Woodrum April 3, 1890, and also one of the 500 reels ordered, and testified that they were the same kind of

paper exactly, and were both genuine Spanish cigarette paper, and that the rest of the paper was like it, and the sample reel given Mr. Coon was also like the 500 reels.

### Testimony of Maguel d'Arxe.

Maguel d'Arxe, another witness, was introduced by the defendant, and testified as follows:

"I live in Baltimore. Am a cigar manufacturer. Been there five years. Native of Cuba, and lived there until I went to Baltimore. Been in the cigar and cigarette business all my life. Am perfectly familiar with Spanish cigarette paper used in Cuba. The French use paper made of rice; the Spanish won't use that. The Spanish cigarette paper is made of wheat.

"In April, 1890, I was at the place on Holliday street, in Baltimore, where Mr. R. H. Woodrum had on exhibition his cigarette machine. Mr. Woodrum wanted me to go with him to Cuba and Mexico to introduce his machine, but we could not agree upon terms. I did not go. He showed me a part of a reel of Spanish paper; told me a Baltimore man got it for him; did not call his name; told me he had ordered 1,000 reels, and could get all he wanted. I did not know Mr. Gross at this time, but afterwards became acquainted with him. I told Mr. Woodrum he need not go to Cuba unless he had plenty of this paper. The paper then shown me by Mr. Woodrum was genuine Spanish cigarette paper, such as is used by the Spanish in Cuba. The paper itself is very common, but I never saw it put on reels before. It is put up in sheets and used by hand in manufacturing cigarettes."

Witness was then shown a piece of the sample paper, and testified that it was just like that Mr. Woodrum showed him in 1890, and was also shown one of the 500 reels, and he testified that the sample and the reel were exactly alike, and were both genuine Spanish cigarette paper.

The witness here made tests before the jury by burning and dampening and tearing the two samples of paper to show they

were the same kind, after which he repeated that they were the same kind of paper, and both were genuine Spanish cigarette paper.

The defendant, on the other hand, admits the contract, but seeks to avoid his obligation to pay for the paper he had ordered, by stating that it was not the right sort of paper, and cut properly to fit the Luddington machine, thus contradicting the evidence of the plaintiff and his own admissions as set forth above, that it was the very paper he wanted. And it will be remembered that he had had one reel for a considerable time, and afterwards paid the $200, which was only due and payable upon compliance with the contract on the part of Gross, and did not refuse to take the 499 reels for a considerable time.

The jury, the proper triers of the fact, have decided against him, and the court did not err in refusing to disturb the verdict. There is no principle upon which he can complain; the verdict was for less than the paper actually cost Gross according to the evidence, and very much less than he charged for it.

There was no agreement between the parties as to the price to be paid for the paper, and the record does not disclose the principle upon which the damages were assessed, but the jury was properly instructed by the court as follows:

Plaintiff's Instructions:

If the jury believe from the evidence that when the said Woodrum gave the order for 500 reels he waived all conditions of the contract except that the paper should be like the sample, they must find for the plaintiff, provided they believe that the paper is like the sample; which was accordingly given by the court.

And the defendant asked the court to instruct the jury as follows:

Defendant's Instructions:

The court instructs the jury that the order given by R. H. Woodrum, dated June 6th, is to be construed in connection with contract between the plaintiff and Woodrum, dated April 3, 1890, and with all the other evidence in the case, and before the plaintiff is entitled to recover in this action, the jury must believe from the evidence that the plaintiff has complied with every substantial condition in said contract provided for, unless the jury believes from the evidence that said Woodrum waived said contract; which was given by the court accordingly.

The plaintiff does not complain of the verdict, and there is no ground upon which the defendant can complain, as we have said, and upon the whole case we are of opinion to affirm the judgment complained of.

JUDGMENT AFFIRMED.